## GIBSON et al. v. VILLINES et al.

No. 19930. Opinion Filed April 28, 1931.

W. W. Pryor, J. B. Campbell, Etha Lawrence, and J. Ralph Knight, for plaintiffs in error.

Edward H. Chandler, Summers Hardy, Ralph W. Garrett, Wm. O. Beall, James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, C. L. Billings, R. J. Roberts, Victor C. Mieher, R. Y. Stevenson, and I. P. Keith, for defendants in error.

RILEY, J. This appeal presents the question of the devolution of the allotted lands of one Nitey, a full-blood Seminole citizen. Nitey died after the 31st day of December, 1899, and before receiving his allotment, thus bringing the devolution of the lands within the provisions of section 2 of the Supplemental Seminole Agreement (31 Stats. L. 250), which reads:

"If any member of the Seminole Tribe of Indians shall die after 31st day of December, eighteen hundred and ninety nine, the lands, money and other property to which he would be entitled, if living, shall descend to his heirs who are Seminole citizens according to the laws of descent and distribution of the state of Arkansas, and be allotted and distributed to them accordingly: Provided, that in all cases where such property would descend to the parents under said laws the same shall first go to the mother instead of the father, and then to the brothers and sisters and their heirs instead of the father."

Nitey died intestate without issue, leaving surviving him, his father, Gibsy, a full sister, Lucy, and two paternal half sisters, Nitchey and Ina Gibson. John Gibson and Marsey Gibson, plaintiffs in this action, were born after the date of the death of Nitey. All were full-blood Seminole citizens.

Gibsy, the father of Nitchey, died intestate April 9, 1909, leaving surviving him his widow, Susey, and his said children. Susey died January 19, 1919, intestate and un-married leaving surviving her, her four children, plaintiffs herein.

Plaintiffs claim an interest in the allotted lands selected as the allotment of Nitey as follows: That upon the death of Nitey one-half of the land descended to Lucy, his full sister, and one-half to Gibsy: that upon the death of Gibsy, his widow, Susey, inherited one-third of his one-half, or one-sixth, and each of his five children inherited one-fifth of the remaining ⅔ of one-half, or 1/15 interest in the lands, and that upon the death of Susey each of her four children, plaintiffs herein, inherited one-fourth of her 1/16 interest in the land. Plaintiffs allege their respective interests to be: Nitchey, 11/90, Ina Gibson, 6/90, John Gibson, 11/90, Marsey Gibson, 11/90, but we compute their interests, if their contentions are sustained, to be each 13/120 in the land.

Demurrers were sustained to plaintiffs' petition setting out their claims in substance as stated above. Plaintiffs elected to stand on their petition. Judgment was entered dismissing the action, and plaintiffs appeal.

The foregoing statements are as to the facts taken from the petition and are presumed to be true only for the purpose of the demurrer, and we so treat them.

As stated before, this action presents the question of the applicability of the proviso contained in section 2 of the Supplemental Seminole Agreement, as follows: "Provided, that in all cases where such property would descend to the parents under said laws (of descent and distribution of the state of Arkansas then in force) the same shall first go to the mother instead of the father, and then to the brothers and sisters and their heirs instead of the father."

The devolution of such lands when the intestate left surviving him a father and brothers and sisters, but no mother, has never, so far as we can find, been determined by this or any court. A closely allied question was presented in the case of Reed v. Narcomey, 131 Okla. 153, 268 Pac. 721. There the intestate left a father, but neither mother, nor brothers, nor sisters, nor their descendants. It was held, under such state of facts, that the proviso was not operative as to the lands and that upon the death of the allottee the law vested the title to one-half of the land in the father and one-half in the heirs of the mother. Mr. Justice Branson, speaking for the court, in that case, in discussing the effect of the provisions of the quoted section 2 of the Supplemental Seminole Agreement, said:

"We ask, what would have been the dev-

olution but for the proviso of said section? Certainly, one-half would have gone to the father, Albert Leitka, and one-half to the mother (she being dead, to her heirs).

"The proviso operated as a modification or limitation of the applicable provisions of said chapter 49. to the extent that the father took no part of the inheritance. The mother took as an heir (just what estate she took is not necessary to determine in this case). If, and when, the brothers and sisters took, they took as heirs in fee simple. Under this proviso, where there is a mother or brothers and sisters, or both, the mother takes first, then the brothers and sisters, or their heirs."

This discussion may not have been necessary in that case, since it was there held that the proviso was not applicable to the facts therein and could not be operative, and for that reason may be considered as dictum, but we think the reasoning sound,. and we adhere thereto. Our attention has also been called to the more full discussion of the effect of the proviso in the original opinion filed in that case, wherein it was said:

"The proviso operated as a modification of the applicable provisions of the said quoted so-called statutes of Arkansas, to this extent: That two classes, who if either in esse, would change this devolution. First, if there was a mother in esse, she would take by inheritance the entire land; second, if no mother, but there were brothers and sisters, or the descendants of such, they would take the entire land. Had either existed in this case, the father, Albert Leitka, would have inherited nothing." (O. A. C. R. of April 27, 1928, p. 248.)

A portion of the foregoing was eliminated in the final opinion for the apparent reason that in that case it was found unnecessary to determine what interest the mother of such an intestate would take in the land, since there was no mother in being to take, but we think the construction there placed upon the effect of the proviso is correct as applied to the brothers and sisters, and we adopt the same. Of course, it is unnecessary here to determine or decide what interest in the land the mother would take under the proviso, since there was no mother to take, but it is necessary to determine whether the brothers and sisters take, and if so, what interest. We think that no other conclusion can be reached from the language of the section, taken as a whole, and we, therefore, hold that where there are no children nor their descendants and no mother, but are brothers and sisters, such brothers and sisters take the entire fee, to the exclusion of the father.

It then becomes necessary to inquire what interest the full sister inherited, and what interest, if any, the half sisters and half brothers took. For a determination of this question we must look to the provisions of the laws of descent and distribution of the state of Arkansas, for this is the requirement of section 2 of the Supplemental Seminole Agreement.

Section 2533, Mansfield's Digest, reads:

"Relations of the half blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood, unless the inheritance come to the intestate by descent, devise or gift, of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

We then inquire, Did the estate come to the intestate by descent, devise, or gift of some of his ancestors? If so, all those who are not of the blood of such ancestors must be excluded from the inheritance.

Shulthis v. McDougal, 170 F. 529, 95 C. C. A. 615, though lands of the Creek Nation were there involved, we think decides this question. The Seminoles acquired their lands under substantially, if not identically, the same conditions as the Creeks. In Shulthis v. McDougal, supra, it was said:

"Among the people of Arkansas there was no way of acquiring land except by grant, gift, or inheritance. This was true even of lands acquired from the federal government under the public land laws. The patentee of such lands was always required to purchase the same either by residence and improvement, or the payment of a purchase price, or by these elements combined. It needs but a moment's thought to see that, when this statute was applied to the lands of the Creek Nation, it was applied to a subject-matter entirely different from that which was in the mind of the Legislature of Arkansas. The lands of that tribe fit into neither of the classes mentioned in the statute. They did not come to a member of the tribe by inheritance from any ancestor, nor could they be spoken of with propriety as a purchase. * * *

"In applying the Arkansas statute, we shall accomplish the purpose of Congress and the Creek Nation best by treating the lands, not as a new acquisition by him, but as an inheritance from his parents as members of the tribe."

From this it appears that the lands here involved did not come to the allottee by descent, devise, or gift of any one of his ancestors, but by or from both father and mother. The full sister, Lucy, being of the

blood of both ancestors, certainly would inherit. But what of the half brothers and sisters, plaintiffs herein? Certainly they would be entitled to participate to the extent at least of that portion of the inheritance that is represented by the blood of the father, but they not being excluded from the inheritance, they must, under the plain provisions of section 2533, supra, inherit equally with the relation of the whole blood, Lucy, unless excluded by some other applicable provision of the Arkansas statute of descent and distribution.

In Kelly v. McGuire, 15 Ark. 555, it was held:

"The half-blood and their descendants take personalty, as well as realty, equally with the whole blood, except that they are excluded from real estate when ancestral, if they lack the blood of the transmitting ancestor."

Section 2523, Mansfield's Digest, after providing for posthumous children, says:

"But no right of inheritance shall accrue to any person other than the children of the intestate, unless they be born at the time of the intestate's death."

This clearly excludes the two half brothers, John Gibson and Marsey Gibson, since by the allegations of the petition they were not born at the time of the death of the intestate, Nitcy.

We, therefore, conclude that upon the death of Nitey the inheritance passed to Lucy, the full sister, and Nitehey and Ina Gibson, the half sisters, in equal parts, one-third to each, in fee. It was, therefore, error to sustain the demurrer to the petition as to plaintiffs Nitchey and Ina Gibson, but not error as to plaintiffs John Gibson and Marsey Gibson.

The judgment is reversed, and the cause remanded, with directions to proceed in accordance herewith.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., dissents. CLARK, V. C. J., not participating.